**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| D.R.D., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Nation Medical Inc. d/b/a TRT Nation,<br><br>Defendant. | Case No.: 1:25-cv-03626 |

**PLAINTIFF'S OPPOSITION TO DEFENDANT NATION MEDICAL INC.'S MOTION TO DISMISS CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 3

III. THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER TRT NATION .......... 5

A. TRT Nation Purposefully Availed Itself in Maryland .......... 7

1. TRT Nation Purposefully Availed Itself in Maryland Under the *Calder* Effects Test .......... 10

2. TRT Nation Purposefully Availed Itself in Maryland by Selling Prescription Medications to Maryland Residents, Like Plaintiff .......... 17

B. Plaintiff's Claims Arise Out of and Relate to Defendant's Maryland Contacts .......... 21

C. This Court's Exercise of Personal Jurisdiction is Reasonable .......... 22

IV. CONCLUSION .......... 23

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,
293 F.3d 707 (4th Cir. 2002) ... 7, 8, 9

*Bailer v. Erie Ins. Exch.*,
344 Md. 515 (1997) ... 10

*Barrett v. Tri-Coast Pharmacy, Inc.*,
518 F. Supp. 3d 810 (D.N.J. 2021) ... 20

*Benford v. Am. Broadcasting Co.*,
649 F. Supp. 9 (D. Md. 1986) ... 10

*Bensusan Restaurant Corp., v. King*,
937 F. Supp. 295 (S.D.N.Y. 1996) ... 9

*Bey v. Shapiro Brown & Alt, LLP*,
997 F. Supp. 2d 310 (D. Md.)
*aff'd*, 584 F. App'x 135 (4th Cir. 2014) ... 6

*Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC*,
388 Md. 1 (2005) ... 5

*Bradley v. DentalPlans.com.*,
617 F. Supp. 3d 326 (D. Md. 2022) ... 21, 22

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ... 10, 11, 13, 14

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ... 7, 22

*Calder v. Jones*,
465 U.S. 783 (1984) ... 2

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*,
334 F.3d 390 (4th Cir. 2003) ... 8, 9, 18

*CFA Inst. v. Inst. of Chartered Fin. Analysts of India,*
551 F.3d 295 (4th Cir. 2009) ... 21

*Chavakula v. Christian Heritage Broad., Inc.*,
2023 WL 2307367 (D. Md. Feb. 28, 2023) ... 17

*CompuServe, Inc. v. Patterson*,
89 F.3d 1257 (6th Cir.1996) ... 9

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
561 F.3d 273 (4th Cir. 2009) ... 7, 8, 12, 21

*Curd v. Papa John's Int'l, Inc.*,
692 F. Supp. 3d 525 (D. Md. 2023) ... 19

*Doe v. Call-On-Doc, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) ... 14, 15

*Fidelis Cybersecurity, Inc. v. Partner One Cap., Inc.*,
771 F. Supp. 3d 614 (D. Md. 2025) ... 10

*Fidrych v. Marriott Int'l, Inc.*,
952 F.3d 124 (4th Cir. 2020) ... 18, 19

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ... 21

*Grayson v. Anderson*,
816 F.3d 262 (4th Cir. 2016) ... 7

*Hausfeld v. Love Funding Corp.*,
16 F. Supp. 3d 591 (D. Md. 2014) ... 6

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) ... 16

*Hernandez v. Bloomingdale's Inc.*,
2024 WL 3554991 (D. Md. July 25, 2024) ... 15, 16

*LL Whitfield Family Trust v. Marvel Entertainment, LLC, et al.*,
2024 WL 7001714 (E.D.N.C. Aug. 19, 2024) ... 18, 19

*McCauley v. Suls*,
123 Md. App. 179 (1998) ... 10

*Nichols v. G.D. Searle & Co.*,
991 F.2d 1195 (4th Cir. 1993) ... 5

*Reynolds Innovations Inc. v. Rodriguez*,
2015 WL 12564212 (M.D.N.C. Dec. 2, 2015) .......... 16

*Ryan v. TEV Corp.*,
2019 WL 5683400 (D. Md. Nov. 1, 2019) .......... 7, 10

*Snakenberg v. Hartford Cas. Ins. Co.*,
299 S.C. 164 (Ct. App. 1989) .......... 10

*Snyder v. Hampton Indus., Inc.*,
521 F. Supp. 130 (D. Md. 1981) .......... 16

*Stover v. O'Connell Assocs., Inc.*,
84 F.3d 132 (4th Cir. 1996) .......... 6

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 16

*UMG Recordings, Inc. v. Kurbanov*,
963 F.3d 344 (4th Cir. 2020) .......... 7, 8, 9

*Young v. New Haven Advoc.*,
315 F.3d 256 (4th Cir. 2002) .......... 15

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*,
952 F. Supp. 1119 (W.D. Pa. 1997) .......... 9, 12, 17

**STATUTES**

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1)-(3) .......... 6

Md. Code Ann., Cts. & Jud. Proc. § 10-401 .......... 1

Md. Code Ann., Cts. & Jud. Proc. § 10-402(a) .......... 10

**OTHER AUTHORITIES**

Restatement (Second) of Conflict of Laws § 36 (1971) .......... 12

## I. INTRODUCTION

Plaintiff D.R.D. ("Plaintiff") filed this putative class action alleging that Defendant Nation Medical Inc. d/b/a TRT Nation ("Defendant" or "TRT Nation") procured Google LLC ("Google") to unlawfully intercept Plaintiff's and class members' personally identifiable health information, specifically information regarding their purchase of prescription medications from Defendant, as part of Defendant's telehealth business. Plaintiff is a Maryland resident who purchased prescription medications from Defendant in Maryland. The interception of Plaintiff's private prescription medication information occurred in Maryland.

Defendant owns and operates https://trtnation.com/ (the "Website") through which it conducts its telehealth business. Defendant's Website is highly interactive and offers state-specific services and products, including in Maryland. Defendant chooses to provide medical services and products to consumers in Maryland, like Plaintiff. Defendant, for its own commercial benefit, procured Google, through use of the Google Analytics tracking software embedded on the Website, to intercept Plaintiff's and class members' personally identifiable health information. Defendant configured Google Analytics to allow Google to collect personally identifiable prescription information at the point of purchase, after the patient has already entered their specific state, input their personal information, and selected a specific prescription medication for purchase. Plaintiff did not consent to his personally identifiable prescription medication information being intercepted by a third party. Plaintiff brings claims on behalf of himself and a class of similarly situated individuals for (i) violation of the Maryland Wiretapping and Electronic Surveillance Act, Md. Code, Cts. & Jud. Proc. Code Sec. 10-401, *et seq*. ("MWESA"), (ii) violation of common law invasion of privacy, intrusion upon seclusion, and (iii) unjust enrichment.

Defendant does not dispute these core facts. Instead, Defendant argues that this Court lacks personal jurisdiction over it. Specifically, Defendant argues: (1) it has not purposefully availed

itself of the privilege of doing business in Maryland, and (2) Plaintiff's claims do not arise out of its forum-based contacts. Defendant's arguments fail because the facts clearly establish a jurisdictional nexus in Maryland sufficient for this Court to exercise specific personal jurisdiction over Defendant. *First*, Defendant has purposefully availed itself in Maryland because it operates a telehealth business in which it treats Maryland patients (like Plaintiff) and through which it unlawfully discloses its patients' private medical information to Google. Defendant both sold prescription medications directly into Maryland and provided medical treatment to patients in Maryland. The interception of Plaintiff's sensitive prescription information also occurred in Maryland. *Second*, Plaintiff's harm arose from, or, at minimum, is related to, Defendant's contacts with the forum because the unlawful disclosures to Google were done at the point of purchase, when Plaintiff and class members chose to purchase prescription medications and become patients of Defendant.

Because Defendant committed an intentional tort against Plaintiff (violation of MWESA and invasion of privacy), purposeful availment may also be analyzed through the *Calder* effects test. *See Calder v. Jones*, 465 U.S. 783 (1984). Under the *Calder* analysis, as synthesized by the Fourth Circuit, purposeful availment is satisfied because Defendant directed electronic activity into Maryland by offering online telehealth services, which manifested its intent to engage in business and other interactions in Maryland. Further, Defendant's activity (permitting Google to intercept Plaintiff's personally identifiable medical information) gave Plaintiff, a Maryland resident, cognizable claims in Maryland courts. Plaintiff felt the effect of the harm in Maryland, and exercise of jurisdiction is supported by Defendant's own contacts with Maryland.

Defendant is subject to specific personal jurisdiction in Maryland, and therefore, its motion to dismiss should be denied in full.

## II. STATEMENT OF FACTS

Defendant is an online telehealth clinic through which patients can discreetly and conveniently purchase prescription medications and medical services. Class Action Complaint, ECF No. 1 ("Complaint"), ¶ 2. Patients (like Plaintiff) access Defendant's services through its Website. *Id.* ¶¶ 1-2 In connection with Plaintiff's purchase of prescription medications through the Website, Plaintiff provided Defendant with sensitive health information that is personally identifiable (i.e. the particular prescription medication purchased, the condition for which it was purchased, and Plaintiff's name and contact information). *Id.* ¶ 3. Unbeknownst to Plaintiff, the sensitive, personal information he communicated through the Website was intercepted by one of the largest advertising companies in the country, Google. *Id.* TRT Nation aided, employed, agreed, and conspired with Google to intercept sensitive and confidential personal and medical communications sent by patients seeking prescription medications and services from Defendant. *Id.* This was a serious invasion of privacy divulging deeply personal aspects of individuals' lives because it included highly sensitive details such as the specific medical conditions, treatment, and prescription medications used by Plaintiff and class members. *Id.* Defendant implemented the Google Analytics tracking technology on its Website, which functioned to transmit private user interactions on the Website to Google, including confidential prescription purchases and personally identifiable information ("PII") from Plaintiff and Class Members. *Id.* ¶ 4.

Plaintiff is a Maryland resident and was in Maryland when he accessed the Website, obtained medical services from Defendant, and purchased prescription medication from Defendant. *Id.* ¶ 7. Plaintiff used the Website to purchase prescription testosterone replacement therapy medication, HCG therapy, HGH peptides, and associated laboratory testing from Defendant in Maryland. *Id.* ¶¶ 8, 12. Unbeknownst to Plaintiff, and with Defendant's assistance and approval, Google intercepted Plaintiff's sensitive prescription medication information through

the Google Analytics software integrated into the Website. *Id.* In addition to information related to his prescription medications, Defendant also aided Google in intercepting Plaintiff's PII, including his unique Google ID which is personally identifiable and in fact identified Plaintiff to Google. *Id.* ¶ 9.

Defendant is incorporated in the State of Florida and maintains a principal place of business in Tampa, Florida. *Id.* ¶ 14. Defendant owns and operates the Website. *Id.* Defendant provides telehealth services and offers prescription medications for purchase on the Website. *Id.* Defendant embedded Google Analytics on its Website for advertising purposes. *Id.*

When prospective patients visit the Website, they are brought to Defendant's homepage, which solicits them to order a prescription medication through the prompt "Get Started." *Id.* ¶ 19, Figure 1. After clicking "Get Started," patients are then prompted to insert their name, email, and phone number. *Id.* ¶ 20, Figure 2. Patients then select a particular prescription medication available in their state (such as Maryland), as set forth in Figure 4:



*Id.* ¶ 22, Figure 4. The treatment options are state specific, as there is a prompt for the customer to "select a state to see what treatment options are available to you," and Maryland is an option. *Id.* After selecting Maryland-specific treatment options (Complaint ¶¶ 22, Figures 5-6), Plaintiff input his PII, including name, gender, email address, phone number, and date of birth. Complaint ¶ 22, Figure 6; ¶ 23.

However, unbeknownst to Plaintiff, Defendant assisted Google in intercepting information related to his purchase of prescription medications. Complaint ¶ 25, Figure 7; *see also* ¶ 24. Defendant's unauthorized backend transmission of data to Google included the specific medication purchased which was personally identifiable, including through disclosing a unique Google ID specific to the patient. Complaint ¶ 25, Figure 7; *see also* ¶¶ 26, 28, 44.

## III. THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER TRT NATION

"A federal court sitting in diversity has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). "Maryland's long-arm statute permits jurisdiction to the limits permitted by due process." *Id.*; *Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 22 (2005) ("Because we have consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the Federal Constitution, our statutory inquiry merges with our constitutional examination."). Therefore, so long as the Court's exercise of personal jurisdiction over Defendant comports with constitutional due process, exercise of personal jurisdiction will be appropriate.

The Court's exercise of personal jurisdiction is appropriate under the Maryland long-arm statute because Defendant (1) "[t]ransacts . . . business or performs any character of work or service in [Maryland]"; (2) "[c]ontracts to supply goods, food, services, or manufactured products in

[Maryland]"; and (3) "[c]ause[d] tortious injury in [Maryland] by an act or omission in [Maryland]." *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1)-(3). *First*, Defendant clearly transacts business in Maryland by accepting telehealth patients in Maryland and providing them with prescription medications and medical services. Complaint ¶¶ 7-8, 22, Figures 4-6. *Second*, Defendant contracts to supply goods (prescription medications) and services (telehealth services) in Maryland. *Id.* *Third*, Defendant caused tortious injury to Plaintiff in Maryland through an act in Maryland, namely, its procuring of Google to intercept his PII and private prescription information in Maryland. *Id.*; *see also* ¶ 25, Figure 7, ¶ 26, ¶ 84.

Defendant argues Plaintiff does not "plead under which section of Maryland's long-arm statute he contends personal jurisdiction is appropriate." Memorandum in Support of Motion to Dismiss, ECF No. 10-1 ("MTD"), at 3-4. Plaintiff is not required to do so because (1) the analysis under the Maryland long-arm statute merges with the constitutional analysis such that exercise of jurisdiction consistent with constitutional due process will necessarily satisfy the Maryland long-arm statute[1]; and (2) Plaintiff can satisfy the long-arm analysis by identifying a specific provision *either* "in his complaint or in opposition to a Rule 12(b)(2) motion." *Hausfeld v. Love Funding Corp.*, 16 F. Supp. 3d 591, 597 (D. Md. 2014). Plaintiff hereby specifies the appropriate Maryland long-arm statute provisions in his opposition to Defendant's 12(b)(2) motion, as permitted, and therefore Defendant's argument regarding the Maryland long-arm statute fails. Defendant makes no substantive arguments as to why Plaintiff does not satisfy the Maryland long-arm statute, and it may not do so on reply. *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 315 (D. Md.),

---

[1] *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996) ("Because the limits of Maryland's statutory authorization for the exercise of personal jurisdiction are coterminous with the limits of the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.").

*aff'd*, 584 F. App'x 135 (4th Cir. 2014) ("Arguments raised for the first time in reply generally should not be considered without affording the opposing party an opportunity to respond[.]").

Under the constitutional analysis, courts in the Fourth Circuit consider: "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal citation omitted). At the pleading stage, "a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). This means that "the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Id.*

Here, Defendant challenges only the first two elements, thereby conceding any arguments regarding reasonableness. Defendant's arguments fail for the reasons set forth below.

**A. TRT Nation Purposefully Availed Itself in Maryland**

Purposeful availment "concerns whether and to what extent 'the defendant purposefully avail[ed] himself of the privilege of conducting business under the laws of the forum state.'" *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020) (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)). Purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts[.]" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks and citation omitted).

Purposeful availment can be satisfied in one of two ways: (1) the traditional purposeful availment analysis or (2) the *Calder* effects test. *Ryan v. TEV Corp.*, 2019 WL 5683400, at *6 (D.

Md. Nov. 1, 2019) (explaining "purposeful availment may exist—even in the absence of substantial presence in the forum—where the defendant intentionally targets the forum and those acts have harmful effects in the forum state.").

Under the traditional analysis, courts in the Fourth Circuit consider the following non-exclusive factors:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*UMG Recordings, Inc.*, 963 F.3d at 352.

Under the *Calder* effects test, "the plaintiff must establish that specific jurisdiction is proper by showing that '(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.'" *Consulting Eng'rs Corp.*, 561 F.3d at 280 (quoting *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 398 n.7 (4th Cir. 2003)).

Applying the *Calder* test in "the context of online activities and websites, as here, [the Fourth Circuit has] recognized the need to adapt traditional notions of personal jurisdictions." *UMG Recordings, Inc.*, 963 F.3d at 352; *ALS Scan, Inc.*, 293 F.3d at 714 ("This standard for reconciling contacts through electronic media with standard due process principles is not dissimilar

to that applied by the Supreme Court in [*Calder*].”); *Carefirst of Maryland, Inc.*, 334 F.3d at 399 (“Judge McLaughlin of the Western District of Pennsylvania first enunciated that court's influential ‘sliding scale’ model for applying *Calder* principles to cases arising from electronic commerce.”). The Fourth Circuit has “adopted the ‘sliding scale’ model articulated in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), to help determine when a defendant’s online activities are sufficient to justify the exercise of personal jurisdiction.” *UMG Recordings, Inc.*, 963 F.3d at 352.

In *Zippo*, the court described the “sliding scale” approach as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. *E.g. CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996). At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. *E.g. Bensusan Restaurant Corp., v. King,* 937 F. Supp. 295 (S.D.N.Y.1996). The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

952 F. Supp. at 1124. “Thus, adopting and adapting the *Zippo* model, [] a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.” *ALS Scan*, 293 F.3d at 714.

Here, as set forth below, Plaintiff has established purposeful availment through both the *Calder* effects test and under the traditional analysis.

### 1. TRT Nation Purposefully Availed Itself in Maryland Under the *Calder* Effects Test

As a threshold matter, Defendant does not contest either the first or second element of the *Calder* test. *See* MTD at 14 (limiting arguments to "express aiming" element). Nevertheless, Plaintiff satisfies both elements.

*First*, Defendant's violation of MWESA is an intentional tort. *See* Md. Cts. & Jud. Proc. Code Sec. 10-402(a) (requiring MWESA violations be conducted "willfully"); *Benford v. Am. Broadcasting Co.*, 649 F. Supp. 9, 10 (D. Md. 1986) (Under the MWESA, "willfully" is defined as "an intentional violation or a reckless disregard of a known legal duty."). Courts have concluded that violations of other similar state wiretapping statutes constitute intentional torts. *See Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025) (finding that claim for violation of analogous California Invasion of Privacy Act is a claim "sounding in tort" thereby justifying a *Calder* analysis). Invasion of privacy under Maryland law is also an intentional tort. *Bailer v. Erie Ins. Exch.*, 344 Md. 515, 527 (1997) ("[W]rongful intrusion into private affairs always involves an intentional act.") (quoting *Snakenberg v. Hartford Cas. Ins. Co.*, 299 S.C. 164, 174 (Ct. App. 1989)); *McCauley v. Suls*, 123 Md. App. 179, 190 (1998) (same).

*Second*, Plaintiff felt the brunt of the harm in Maryland. Plaintiff is a Maryland resident who accessed the Website in Maryland. Complaint ¶ 7. Further, "Plaintiff's and Maryland Class members' electronic communications were intercepted in Maryland." *Id.* ¶ 84. The harm resulting from the invasion of Plaintiff's privacy because of Defendant's unlawful disclosure of Plaintiff's personally identifiable prescription information was necessarily felt by Plaintiff in Maryland, as Plaintiff resides in Maryland. *See Ryan*, 2019 WL 5683400, at *10 ("Plaintiff resides in Maryland. . . Thus, to the extent that he was deprived of Annual Distributions, he was financially injured in the State."); *Fidelis Cybersecurity, Inc. v. Partner One Cap., Inc.*, 771 F. Supp. 3d 614, 635 (D.

Md. 2025) ("With regard to the second prong, Plaintiffs have alleged that they suffered the harm in Maryland, where [they are located]."). In short, Defendant's action was an intentional act which it knew would cause harm to Maryland consumers by violating the laws the Maryland legislature enacted to protect Maryland consumers' right to data privacy and security of their medical information. *See Briskin*, 135 F.4th at 756 (finding *Calder* effects test met under similar circumstances where "Shopify's actions in its regular course of business is an intentional act, which Shopify knows will cause harm to California consumers by violating the very laws that the California legislature has enacted to protect California consumers' rights to data privacy and security").

*Third*, Defendant expressly aimed its tortious conduct at the forum such that Maryland can be said to be the focal point of the harm. Specifically, Defendant maintained a highly interactive Website wherein it offered specific services to Maryland residents. Complaint ¶¶ 7-8; 19-23. Maryland residents had to provide their personal information, including their address, and Defendant then sold prescription medications to patients in Maryland and provided other telehealth services to Maryland residents (such as bloodwork services and consultations with medical providers). *Id.* In connection with this process, namely when Plaintiff ordered prescription medications on the Website, "Defendant procured Google to track and intercept Plaintiff's . . . internet communications while navigating the Website," including his personally identifiable prescription information. *Id.* ¶ 81. Defendant knew it was reaching into Maryland because it knows where its patients are from. Defendant therefore knew it was procuring Google to intercept information from Maryland residents. Further, "Defendant sought to profit and in fact did profit off the interception of Plaintiff's and the Maryland Class members' electronic communications[.]" *Id.* ¶ 85.

In sum, Defendant is an online telehealth provider offering the same services as a traditional healthcare provider in a physical location. The personal jurisdiction analysis would be obvious if Defendant established a physical health clinic in Maryland and allowed undisclosed and unauthorized third parties to listen in on the prescription medications provided to its patients. That is exactly what happened here, the only difference is it happened online. But the analysis is the same, Defendant is subject to personal jurisdiction in Maryland. *See* Restatement (Second) of Conflict of Laws § 36 (1971) ("A state has power to exercise judicial jurisdiction over an individual who has done, or has caused to be done, an act in the state with respect to any cause of action in tort arising from the act.").

Application of the *Calder* test in this case does not run afoul of the minimum contacts analysis. *Consulting Eng'rs Corp.*, 561 F.3d at 280 ("The effects test does not supplant the minimum contacts analysis, but rather informs it."). That is because the lawsuit arises from *Defendant's direct contacts* with the forum, namely reaching into Maryland to provide telehealth products and services to patients located in Maryland. Plaintiff was injured in connection with Defendant's provision of telehealth services because Defendant procured Google to intercept Plaintiff's personally identifiable prescription information while Plaintiff was seeking those services from Defendant (i.e. when Plaintiff became a patient).

The exercise of specific personal jurisdiction over Defendant also comports with *Zippo*. Under the *Zippo* framework, Defendant's Website is one where Defendant clearly does business over the internet by providing telehealth services to Maryland residents such that personal jurisdiction is proper. 952 F. Supp. at 1124. Defendant's Website is also highly interactive and offers specific services for Maryland residents, as set forth in the Complaint. *See, e.g.*, Complaint ¶¶ 18-28. Not only is Defendant's Website highly interactive, but it sells prescription medications

to Maryland consumers, combining both purposeful targeting of the Maryland market with Website interactivity. Tellingly, Defendant does not even reference *Zippo* in its brief, even though it was explicitly adopted by the Fourth Circuit.

Plaintiff also meets each of the three elements of the *ALS Scan* test, applying *Zippo* and *Calder*. *First*, Defendant clearly directed electronic activity into Maryland by offering Maryland residents state-specific telehealth services. Complaint ¶¶ 7-8, 19-23. *Second*, Defendant's provision of state-specific telehealth services evidenced Defendant's intent of engaging in business and other interactions within Maryland. *Third*, Defendant's Maryland-related activity created a cause of action for Plaintiff because Defendant procured a third-party (Google) to unlawfully wiretap Plaintiff's personally identifiable prescription information in connection with his obtaining telehealth services from Defendant in Maryland, which is actionable under MWESA. Complaint ¶¶ 7-8, 19-23, 73-87.

This case is like *Briskin*. There, the plaintiff alleged that the defendant violated the California Invasion of Privacy Act by installing software cookies on his device without his knowledge or consent that collected his personal data. *Briskin*, 135 F.4th at 746. The defendant was a Canadian corporation with two United States subsidiaries, both incorporated in Delaware with one having a principal place of business in New York and the other in Delaware. *Id.* at 748. The plaintiff was a California resident and sued in the Northern District of California. *Id.* Applying the *Calder* test, the Ninth Circuit found the defendant was subject to personal jurisdiction in California. *Id.* at 756 ("We conclude that Shopify's intentional activities constitute express aiming toward California and its consumers to obtain and use their personal data for its own commercial gain."); *see also id.* (finding "it is clear that Shopify expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of the California

consumers' personal data in violation of California laws"). The Ninth Circuit reasoned that "[p]re-internet, there would be no doubt that the California courts would have specific personal jurisdiction over a third party who physically entered a Californian's home by deceptive means to take personal information from the Californian's files for its own commercial gain. . . Here, though Shopify's entry into the state of California is by electronic means, its surreptitious interception of Briskin's personal identifying information certainly is a relevant contact with the forum state." *Id.* at 756-57.[2]

Further, in *Doe v. Call-On-Doc, Inc.*, 2025 WL 1677632 (S.D. Cal. June 13, 2025), a district court found that a defendant telehealth platform was subject to personal jurisdiction under facts like those presented here. In *Doe*, the plaintiff alleged that the defendant provided "telehealth services where patients can consult with physicians from the convenience of their own homes and order tests for medical conditions[,]" and that when "using the website, patients must select the condition [for which] they are seeking treatment." *Id.* at *1. Like here, the plaintiff alleged that the defendant embedded Google Analytics on its telehealth platform which functioned to intercept "PII, [private health information] and other confidential information in real time when patients enter information on Defendant's website[.]" *Id.* at *2. The court found that the defendant was subject to specific personal jurisdiction under the *Calder* test based on these facts. *Id.* at *7-9. Specifically, the court concluded the defendant expressly aimed its conduct at the forum because the plaintiff made "a prima facie showing that Defendant knowingly and intentionally embedded and configured Google Analytics [. . .] on its website and expressly aimed its conduct at California

[2] This case is an even stronger basis for personal jurisdiction under the effects test because here, Plaintiff is suing the actual merchant who sold prescription medications and medical services to Plaintiff in Maryland. *Briskin* stands for the broader proposition that even the third-party provider of the tracking software would be subject to personal jurisdiction.

by assisting them in the targeting of Plaintiff's device for its own personal gain." *Id.* at *8. Plaintiff makes similar allegations here. Complaint ¶ 85 ("Defendant sought to profit and in fact did profit off the interception of Plaintiff's and the Maryland Class members' electronic communications while intentionally or recklessly disregarding its own legal duty."); *see also id.* ¶ 4 ("Defendant chose to implement Google Analytics on its Website, which functioned to transmit private user interactions on the Website to Google, including confidential prescription purchases and personally identifiable information . . . from Plaintiff and Class Members."); *id.* ¶¶ 18-28. Therefore, this Court should apply the same analysis as the court in *Call-On-Doc*.

None of Defendant's cited authorities are persuasive. *First, Young v. New Haven Advoc.*, 315 F.3d 256 (4th Cir. 2002) is distinguishable. There, two small Connecticut-based newspapers allegedly ran stories defaming a Virginia prison warden overseeing a prison in which Connecticut-based inmates were transferred. *Id.* at 259-61. Unlike here, the plaintiff in *Young* was not a customer of the newspaper defendants and did not suffer a harm connected with directly interacting with an interactive website. Unlike in *Young,* where two clearly local out-of-state newspapers merely posted an article online (designed to reach a Connecticut audience), here Defendant specifically reached into Maryland by directly and interactively engaging with Maryland residents regarding telehealth services (and procured Google to intercept their personally identifiable health information in the process). *See* Complaint ¶¶ 18-28.

*Second*, *Hernandez v. Bloomingdale's Inc.*, 2024 WL 3554991 (D. Md. July 25, 2024) is also distinguishable. There, the plaintiff complained of the defendant's use of session replay software (which allegedly captured mouse clicks, scrolls, pages visited, etc.) on Bloomingdale's general, nationally available website. *Id.* at *2. Importantly, while the plaintiff noted that Bloomingdale's website had certain functions relevant to Maryland (including the ability to book

an appointment with a sales representative in a store in Maryland), there was no allegation by the plaintiff that she had undertaken any such function on the defendant's website. *Id.* at *1-2. There was also no allegation that the plaintiff purchased merchandise from the defendant which was captured by the session replay software. At bottom, the court was left with a situation where the plaintiff had browsed generally available webpages on a nationally available website, which the court found did not support an exercise of personal jurisdiction.

Here, by contrast, Plaintiff does not allege mere session replay software on Defendant's general Website. Instead, Plaintiff alleges that Defendant procured Google to intercept specific personal information of Maryland residents like Plaintiff who were patients of Defendant, specifically their personally identifiable health information, including the specific medications they purchased; these transmissions were connected with Defendant's sale of prescription medications into Maryland. *See, e.g., Reynolds Innovations Inc. v. Rodriguez*, 2015 WL 12564212, at *1 (M.D.N.C. Dec. 2, 2015) ("The Court has personal jurisdiction over Defendant because the infringing products that Defendant offered and made available to purchasers in North Carolina were shipped to and received by purchasers in North Carolina."); *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130, 146-47 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985) (finding purposeful availment where the defendant "purposefully engaged the plaintiffs to solicit purchase orders for its products from Maryland customers, entered into sales contracts with those customers based on the purchase orders, caused the products to be delivered to the customers in Maryland and derived substantial economic benefit from those sales"); *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1094 (9th Cir. 2023) ("Thus, we conclude that the sales of physical products into a forum via an interactive website can be sufficient to establish that a defendant expressly aimed its conduct at the forum[.]"); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 742 (N.D. Cal. 2023) ("Taking

the allegations of Swarts's complaint as true, as it must, the Court finds that he sufficiently alleges that Home Depot sold a physical product to him via its interactive website. Therefore, Swarts has satisfied the express aiming element, and has established that Home Depot purposefully directed its conduct at the forum state.").

#### 2. TRT Nation Purposefully Availed Itself in Maryland by Selling Prescription Medications to Maryland Residents, Like Plaintiff

Even under the traditional purposeful availment analysis, Defendant has sufficient contacts with Maryland to justify the exercise of personal jurisdiction. As stated in Section III.A.1., above, Defendant availed itself in Maryland because it offered Maryland-specific telehealth services to customers in Maryland (including Plaintiff), actively treated customers in Maryland, and offered a highly interactive Website and platform tailored to services offered specifically in Maryland. *See* Complaint ¶ 22, Figures 4-6. Defendant's unlawful conduct was related to its Maryland-specific contacts, namely Defendant procuring Google to intercept personally identifiable health information provided in connection with Plaintiff's and class members' treatment with Defendant.

Defendant argues Plaintiff's allegations are deficient because he must show it had the "manifest intent" of targeting Maryland. MTD at 6. But, as explained in Section III.A.1., above, Defendant's treatment of Maryland patients like Plaintiff and sale of prescription medications and medical services into Maryland clearly evidences an intent to target the Maryland market. Further, "manifest intent" is only required when the website at issue falls under *Zippo*'s middle ground, but here, Defendant's Website is at the "end of the spectrum" where Defendant clearly does business over the Internet such that "personal jurisdiction is proper." *Zippo*, 952 F. Supp. at 1124; *Chavakula v. Christian Heritage Broad., Inc.*, 2023 WL 2307367, at *3 (D. Md. Feb. 28, 2023) ("Where a website is used to conduct business over the internet and to enter into contracts with internet users from the forum state involving the knowing and repeated transmission of information

over the internet, it is an active website and personal jurisdiction is proper.") (quoting *Carefirst*, 334 F.3d at 400). Even if this Court finds manifest intent is required, it is clearly satisfied by Defendant specifically targeting Marylanders for its telehealth services with state-specific options. Complaint ¶ 22, Figure 4.

Defendant principally relies on *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124 (4th Cir. 2020), but it is distinguishable. There, the plaintiff sued Marriott in South Carolina for negligence surrounding an injury allegedly caused by a shattered shower door in a hotel in Milan, Italy. *Id*. at 129. As an initial matter, the plaintiff did not personally book the hotel room or make any direct purchase from South Carolina. *Id*.; *see also LL Whitfield Family Trust v. Marvel Entertainment, LLC, et al.*, 2024 WL 7001714, at *7 (E.D.N.C. Aug. 19, 2024) ("*Fidrych* did not describe any actual sales transactions that occurred on Marriott's website"). Instead, the plaintiff merely alleged that Marriott maintained an interactive website which was available in South Carolina and allowed individuals worldwide to book hotel stays. *Id*. at 141. Indeed, the Fourth Circuit noted that "none of the wrongs Marriott is alleged to have committed took place in South Carolina." *Id.* at 140. The alleged negligent act in *Fidrych* occurred in Italy (alleged improper maintenance of a shower door), separate and apart from Marriott's website or online activity.

Here, by contrast, the wrongful act (intentional tort of unlawful wiretapping and invasion of privacy) was committed as a direct and proximate result of Defendant's online forum-based contacts in Maryland, specifically its provision of telehealth services. Through its online platform, Defendant reached into Maryland and dealt directly with Maryland consumers for its direct financial benefit, and in connection with those contacts, invaded Plaintiff's privacy. Therefore, here, Plaintiff is not seeking to establish jurisdiction based on Defendant's website for a wrongful act unconnected with the Website. Instead, Plaintiff bases jurisdiction directly on Defendant's

forum-based conduct committed through its interactive Website, which it used to both sell prescription medications and medical services in Maryland.[3]

Defendant also relies on this Court's decision in *Curd v. Papa John's Int'l, Inc.*, 692 F. Supp. 3d 525, 527-28 (D. Md. 2023) (Rubin, J.), but *Curd* is distinguishable. In *Curd*, the plaintiff did not allege that she purchased any pizza or other products from Papa Johns. The plaintiff merely alleged that she visited the Papa John's website and that session replay software collected mouse clicks and other similar actions taken on the website. *Id.* Here, Plaintiff's claims do not involve Defendant's general Website and recording of mouse clicks and the like. Instead, Defendant procured Google to intercept information *at the point of purchase* which required Plaintiff and class members to identify themselves as from Maryland (because Defendant's services are state specific) and sent to Google information about the specific prescription medications (and medical services) Plaintiff and class members purchased, which were to be sent to Maryland. Under the circumstances of this case, Defendant's jurisdictional contacts are not fortuitous or random as it relates to the cause of action alleged, nor is the basis of jurisdiction merely visiting a website available nationwide. Defendant specifically targeted Maryland customers to provide medical services, and in connection with Plaintiff's and class members' purchase of those medications and services, Defendant unlawfully procured Google to intercept Plaintiff's and class members' personally identifiable health information.

At bottom, Defendant received all the benefits of maintaining a telehealth business in

---

[3] Courts have been careful not to overread *Fidrych*. For example, in *LL Whitfield Family Trust*, 2024 WL 7001714, at *6, the court distinguished *Fidrych* on the grounds that in *Fidrych*, "the claims asserted against Marriott sounded in products liability and negligence whereas, in this case, the claims asserted are intentional torts." Further, the court in *Whitfield* noted that where, as here, the claim directly arises out of the commercial activity on the defendant's website, the case falls outside the scope of *Fidrych*. *Id.* at *6-7.

Maryland. It specifically accessed and targeted the Maryland market and derived revenue from Maryland consumers (like Plaintiff). It is therefore reasonable that Defendant be haled into Court in Maryland for harms it committed in connection with its business activity in Maryland (i.e. procuring a third party to intercept its patient's personally identifiable health information). This is a limiting principle which undermines Defendant's argument that jurisdiction would be available in every place Defendant's Website can be reached (MTD at 7), not so. Defendant is only subject to jurisdiction in states (like Maryland) where it specifically conducts a telehealth business and accepts patients and causes harm to a patient in connection with those services (as it did here with Plaintiff).

Defendant argues that "[t]he drop-down state selection menu includes all states and therefore does not reflect specific solicitation of Maryland residents." MTD at 10. But that is incorrect because the minimum contacts analysis has nothing to do with the scope of Defendant's business. It has to do with whether there are minimum relevant contacts in a particular state warranting the exercise of jurisdiction. It is axiomatic that if a defendant causes a harm in a state to a purchaser of a product in connection with the sale of the product, it is subject to personal jurisdiction in the state where the harm occurred. *See, e.g., Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 821 (D.N.J. 2021) ("Plaintiff has pled a prima facie case of specific jurisdiction [because the plaintiff] alleges that Defendants have purposefully directed their activities to New Jersey by selling the contaminated pharmaceuticals directly to consumers, including Plaintiff, in New Jersey."). Defendant, like every other company, has to weigh the risks and benefits of the scope of its business; if it obtains the benefit of operating broadly, it also must bear the detriments. It cannot avail itself of a market, obtain the benefits, and then use its own chosen scope of business as a defense when called to task for a wrong caused in connection with

that business. Here, Plaintiff alleges the interception of his personally identifiable health information occurred in Maryland and that he purchased prescription drugs from Defendant in Maryland. Complaint ¶¶ 7, 84. For the reasons stated above, Defendant committed an intentional tort against Plaintiff in connection with its Maryland contacts (sale of prescription drugs and medical services into Maryland), and therefore it is subject to jurisdiction in Maryland.

**B. Plaintiff's Claims Arise Out of and Relate to Defendant's Maryland Contacts**

"The second prong of the test for specific jurisdiction—that the plaintiff's claims arise out of the activities directed at the forum—requires that the defendant's contacts with the forum state form the basis of the suit." *Consulting Eng'rs Corp.*, 561 F.3d at 278-79. "The analysis [] is generally not complicated. Where activity in the forum state is 'the genesis of [the] dispute,' this prong is easily satisfied. *See CFA Inst,* 551 F.3d at 295. "A plaintiff may satisfy the nexus requirement by showing that the suit *either* 'arises out of' *or* 'relates to' the defendant's contacts with the forum." *Bradley v. DentalPlans.com.*, 617 F. Supp. 3d 326, 336 (D. Md. 2022). "The first half of that standard—the 'arise out of' phrase—asks about causation, while the back half—the 'relate to' phrase—'contemplates that some relationships will support jurisdiction without a causal showing.'" *Id.* (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021)).

Plaintiff satisfies the nexus requirement for many of the same reasons set forth in Section III.A., above. Plaintiff's claims arise out of Defendant's activities directed at the forum; that is, Plaintiff's claims arise from Defendant's provision of telehealth services to Plaintiff in Maryland because Defendant procured Google to intercept Plaintiff's health-related communications with Defendant. *See, e.g.,* Complaint ¶¶ 3-4, 66, 81. As stated above, Defendant's unlawful wiretapping of Plaintiff occurred at the point of purchase (i.e. when Plaintiff became a patient of Defendant) of

a particular prescription medication, causing that information to be disclosed to Google. Said another way, Plaintiff's claim would not arise but for Defendant's forum-based contacts of providing prescription medication and medical services in Maryland. As such, the nexus prong is easily satisfied. Here, as Plaintiff meets even the more restrictive standard of "arises out of," Plaintiff necessarily meets the lesser standard of "relating to" Defendant's forum-based conduct.

Understanding the above, Defendant's argument that "Plaintiff's claims . . . have nothing to do with the medication that Plaintiff or any other person may have ordered through the Website" (MTD at 11) can be easily rejected. Defendant procured Google to intercept information regarding the specific medications that Plaintiff and class members purchased. This is not a case where Plaintiff is suing over cursor movements and mouse clicks on a general website generally available to the public; instead, Defendant procured Google to intercept personal identifiable prescription medication purchases at the point of purchase. Therefore, the interception cannot be logically separated from the forum-based conduct. The analogy provided by the Ninth Circuit in *Briskin* is equally apt here – there would be no reasonable argument that if Defendant allowed a third-party to surreptitiously listen into its prescription of medications to patients while running an in-person health clinic, that a resulting lawsuit would clearly arise from the forum-based conduct. The online environment does not change that fundamental analysis.

**C. This Court's Exercise of Personal Jurisdiction is Reasonable**

As stated above, Defendant does not even attempt to challenge the third element of the specific personal jurisdiction analysis (i.e. reasonableness). Importantly, for the reasonableness element, the burden shifts to Defendant "to 'present a compelling case' that jurisdiction is unreasonable." *Bradley*, 617 F. Supp. 3d at 345 (quoting *Burger King*, 471 U.S. at 477). Defendant

has presented no case whatsoever, let alone a compelling case, as to why this Court's exercise of jurisdiction would be unreasonable under the circumstances.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied in full.

Dated: March 18, 2026

*/s/ Nathaniel K. Risch*
Nathaniel K. Risch

**MANN & RISCH, LLC**
Nathaniel K. Risch
101 E. Chesapeake Ave., Ste. 403
Towson, MD 21286
Telephone: (410) 929-5145
Facsimile: (410) 307-1007
E-Mail: nate@mannrisch.com

**BURSOR & FISHER, P.A.**
Alec Leslie (*pro hac vice* forthcoming)
Andrew Obergfell (*pro hac vice* forthcoming)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: aleslie@bursor.com
aobergfell@bursor.com

**BURSOR & FISHER, P.A.**
Stephen A. Beck (*pro hac vice* forthcoming)
701 Brickell Ave., Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: sbeck@bursor.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFIY that on March 18, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Nathaniel K. Risch*
Nathaniel K. Risch

**MANN & RISCH, LLC**
Nathaniel K. Risch
101 E. Chesapeake Ave., Ste. 403
Towson, MD 21286
Telephone: (410) 929-5145
Facsimile: (410) 307-1007
E-Mail: nate@mannrisch.com