**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF MARYLAND**

D.R.D., individually and on behalf of all others similarly situated,

Plaintiff

Case No. 1:25-cv-03626

v.

Nation Medical Inc. d/b/a TRT Nation,

Defendant.

______________________________________/

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ............................................................................................................... 2

A. The Allegations in the Complaint do not Establish that TRT Nation's Website Targets Maryland. ........................................................................................... 2

B. The Allegations in the Complaint do not Demonstrate Purposeful Availment. ..... 10

C. Plaintiff's Claims are Unrelated to any Alleged Maryland Contacts. .................... 14

III. CONCLUSION ......................................................................................................... 15

# I. INTRODUCTION

Under Fourth Circuit precedent, when personal jurisdiction is premised on website activity, a plaintiff must make a prima facie showing that the defendant purposefully directed its website at Maryland. This is not met when the website does not target Maryland any more than it targets any other state. In his Opposition to the Motion to Dismiss (Doc. 15) (the "**Opposition**"), Plaintiff attempts to manufacture jurisdiction by reframing nationwide website activity as Maryland-specific conduct[1] and conflating the alleged merits of his claims with the jurisdictional inquiry. That effort fails. Plaintiff has not met his burden to establish that TRT Nation, by operation of its nationwide website, www.trtnation.com (the "**Website**"), purposefully targeted Maryland. Like the websites in analogous cases from this District (*Curd v. Papa John's Int'l, Inc.* and *Hernandez v. Bloomingdale's Inc.*), TRT Nation's Website does not target Maryland any more than it targets any other state. Plaintiff has failed to rebut this fact and is unable to—a fatal deficiency in his effort to show personal jurisdiction under Fourth Circuit precedent.

Moreover, Plaintiff's claims arise out of and relate solely to the use of Google Analytics on the Website —"one of the most popular web analytics platforms on the internet"[2]. Although his Opposition attempts to link Plaintiff's claims to a purchase he made on the Website, the fact remains that this case has nothing to do with the products or services offered through the Website. Focusing on the alleged interception of information relating to a product purchased on the Website does not suddenly transform this case into something more than a dispute about the use of Google

[1] Plaintiff contends that TRT Nation does not dispute the "core facts." Doc. 15 at 1. TRT Nation challenged personal jurisdiction on the basis that the allegations in the Complaint are insufficient. As a result, the Court must take them as true. *Ross v. TK Elevator Corp.*, 2026 WL 302536, at *5-6 (D. Md. Feb. 5, 2026) (explaining standard for *prima facie* case of personal jurisdiction and explaining the analysis "resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6), in that we assess whether the facts put forward by the party asserting jurisdiction, which we accept as true, meet that party's burden to make out the prima facie case." TRT Nation not disputing the facts in the Complaint is merely a reflection of the nature of its challenge and the applicable standard; it is not in any way a concession that the allegations in the Complaint are truthful—because they are not.

[2] *See* Doc. 1 at ¶ 36.

Analytics. Thus, Plaintiff has also failed to show that his claims arise out of or relate to any of TRT Nation's alleged contacts with Maryland. Because Plaintiff has not shown the allegations in the Complaint establish the purposeful availment and relatedness prongs of specific personal jurisdiction, he has not made a prima facie case of personal jurisdiction and the Complaint must be dismissed.

## II. ARGUMENT

### A. THE ALLEGATIONS IN THE COMPLAINT DO NOT ESTABLISH THAT TRT NATION'S WEBSITE TARGETS MARYLAND.

Plaintiff has failed to show that this Court may exercise personal jurisdiction over TRT Nation under either the *Calder* effects test or the Fourth Circuit's *ALS Scan* test. Plaintiff's application of the *Calder* effects and *ALS Scan* tests is premised on a misapprehension of what those tests require with respect to targeting conduct at a specific state. Plaintiff's erroneous application of the *Calder* effects test and the *ALS Scan* test is a result of Plaintiff's failed attempt to repackage ordinary, nationwide online activity as Maryland-specific activity. The Court need look no further than the fact that the alleged conduct is *indistinguishable* from alleged conduct directed at users in every other state. Plaintiff's argument can be made for every state or territory of the United States where a resident may choose to use the Website. This exemplifies why personal jurisdiction is not appropriate in this action.

As applied in the Fourth Circuit, the *Calder* effects test and the *ALS Scan* test are "not dissimilar." *Khashoggi v. NSO Grp. Techs. Ltd.*, 138 F.4th 152, 162 (4th Cir. 2025). Both tests share the requirement "of some kind of conduct directed at the forum." *Id.* Under the *Calder* effects test, "[t]he effects of the act for which a plaintiff seeks relief must create a connection to the forum itself, 'not just to parties who happen to live there.'" *Id.* at 160. "The connection must be substantial, so that a person cannot be haled into the forum simply because he knew that his

conduct would have incidental effects there." *Id.* (internal quotation marks omitted). "Finally, the charged conduct must be 'expressly aimed' at the forum, or, in other words, the forum must be the 'focal point' of the conduct." *Id.* (quoting *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 230 (4th Cir. 2019)).

Thus, in the context of claims arising from the use of common website analytics tools, courts applying the *Calder* effects or the *ALS Scan* tests require that the website, or the use of technologies on the website, be targeted at a particular forum state. *Hernandez v. Bloomingdale's Inc.*, 2024 WL 3554991, at *7 (D. Md. July 25, 2024) (finding there was no personal jurisdiction under either the *Calder* effects or *ALS Scan* tests because website did not target Maryland residents); *Curd v. Papa John's Int'l, Inc.*, 692 F. Supp. 3d 525, 532 (D. Md. 2023) (in applying the similar prong of the *ALS Scan* test, finding that a website accessible nationwide did not give rise to personal jurisdiction without a showing that it directly targets Maryland); *Hasson v. FullStory, Inc.*, 114 F.4th 181, 190 (3d Cir. 2024) ("The District Court held that Schnur did not satisfy *Calder's* 'effects' test because he did not allege that Papa Johns expressly aimed Session Replay Code at Pennsylvania. We agree."); *Delong v. PHE, Inc.*, 2025 WL 2447787, at *9 (E.D. Pa. Aug. 25, 2025) ("[N]othing in our record suggests that PHE's website is expressly aimed at Pennsylvania.").

In the Opposition, Plaintiff tries to reframe the issues and allegations in the Complaint as involving the sale of products into Maryland through a Maryland focused website. (Doc. 15 at 11). But Plaintiff's arguments extend beyond the allegations in the Complaint, overstate the allegations, and focus on the actions of Plaintiff or Maryland residents on TRT Nation's website, rather than whether TRT Nation's use of the Website or Google Analytics on the Website targets Maryland. Plaintiff claims that the Website is "highly interactive" and that, when ordering products, Maryland

residents had to provide their "personal information, including their address, and [TRT Nation] then sold prescription medication to patients in Maryland…." (*Id.*) Based on this, Plaintiff claims TRT Nation "knew it was reaching into Maryland because it knows where its patients are from," but does not actually allege as much in the Complaint, though such allegations would be insufficient as argued below. (*Id.*; *see generally* Doc. 1).

The allegations in the Complaint merely reflect the steps required to place an order on the Website with Maryland selected from a drop-down menu that Plaintiff does not dispute includes states across the country. (Doc. 1 at ¶¶ 19-26). Throughout the allegations in the Complaint, there is nothing that shows a specific targeting of Maryland. The contrary is true. Plaintiff alleges that "[s]imilar transmissions occurred regardless of the specific prescription purchased by the customer." (Doc. 1 at ¶ 26). Thus, Plaintiff's reliance on the fact that *he* selected Maryland to see available products in Maryland, Doc. 15 at 17, fails to move the needle because he alleges that the alleged tortious conduct occurs irrespective of what a customer purchases. Stated otherwise, the only Maryland connection Plaintiff alleges *in the Complaint* is the fact that *he* selected Maryland from a drop-down menu that includes other states nationwide. This is not enough to subject TRT Nation to specific personal jurisdiction under either the *Calder* effects or *ALS Scan* tests. Plaintiff's attempts to distinguish case law in the Fourth Circuit and this District fail.

Plaintiff claims that the decision in *Bloomingdale's* is distinguishable—it is not in any meaningful way pertinent to the inquiry before the Court. (Doc. 15 at 14-15). Plaintiff attempts to distinguish the decision in two ways: (1) the case involved session replay software; and (2) "there was no allegation by the plaintiff that she had" booked an appointment to meet with a defendant's representative at its physical store in Maryland or purchased merchandise on the website. (*Id.*) But both points are irrelevant to the question at hand.

What a plaintiff alleges he or she did on a website carries little weight because the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum state." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). "[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284. The fact that Plaintiff alleges he chose to make a purchase on the Website, while the plaintiff in *Bloomingdale's* did not allege doing so, is of no consequence.

Looking at the relevant inquiry — *defendant's* contacts, the defendant in *Bloomingdale's* had far more significant contacts with Maryland, yet that was still not enough to subject it to personal jurisdiction. Bloomingdale's has a physical store in Maryland and its website's features were related to the business conducted in that physical store including: (1) "plac[ing] online orders for delivery"; (2) "book[ing] appointments with sales representatives at the Bloomingdale's brick-and-mortar store in Maryland"; (3) "check[ing] whether a product is in stock at" a Maryland store; (4) "order[ing] products for in store pickup"; and (5) "search[ing] for nearby stores in Maryland and provid[ing] directions to those stores based on the user's location." 2024 WL 3554991, at *1-2. TRT Nation does not have any physical presence in Maryland and Plaintiff only alleges that TRT Nation's Website allows individuals in Maryland to make purchases. If Bloomingdales' contacts with Maryland were not sufficient, *id.* at *7, it stands to reason it is not enough here either.

Second, the fact that *Bloomingdale's* involves session replay software rather than Google Analytics is of no consequence. The decisions in analogous cases have not turned on the nature of

technology at issue. For example, in *Delong v. PHE, Inc.*, a case involving the use of Google Analytics on an online retail website that sells adult products and where the plaintiff alleged making purchases, the district court found no personal jurisdiction applying the Third Circuit's decision in *Hasson*—a case involving the use of session replay software. 2025 WL 2447787, *8-9. The type of technology played no role in the court's personal jurisdiction analysis because the analysis is agnostic to whether the case involves session replay software, google analytics, or any other of the myriads of website analytics tools. *See id.* Nor does Plaintiff argue to why the specific technology at issue matters to the analysis and in what way—because it does not matter.

Plaintiff also contends jurisdiction is proper under the *Zippo* test claiming it is "telling" that TRT Nation did not address *Zippo*. (Doc. 15 at 13). But the *Zippo* test was adopted and adapted by the Fourth Circuit into what is the *ALS Scan* test, which TRT Nation addressed in the Motion to Dismiss. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002) ("adopting and adapting the *Zippo* model" into what is now known as the three factor *ALS Scan* test). In fact, "[a] comparison of" the *ALS Scan* formulation "to the original *Zippo* test indicates that the *ALS* test emphasizes th[e] requirement of *purposeful* targeting of a particular forum, not just the level of interactivity" of a website. *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 594 (E.D. Va. 2003). Indeed, while Plaintiff repeatedly calls the Website "highly interactive" (it is not) relying on *Zippo's* sliding scale approach of website interactivity, the Fourth Circuit has cautioned that attaching "too much significance on the mere fact of interactivity" risks "losing sight of the key issue in a specific jurisdiction case—whether 'the defendant has *purposefully directed* its activities at residents of the forum.'" *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 142 (4th Cir. 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Where a defendant does not use a website to target residents of a particular state, the

website's alleged level of interactivity is not enough to support the exercise of personal jurisdiction. *Fidrych*, 952 F.3d at 143 ("Accordingly, even though Marriott's website is interactive, Marriott does not use it to target South Carolina residents in particular."); *Bloomingdale's*, 2024 WL 3554991 at *7 (level of interactivity of website not dispositive). Thus, because Plaintiff cannot meet the *ALS Scan* test for the reasons stated in the Motion to Dismiss and herein, he necessarily cannot meet the *Zippo* test as applied in the Fourth Circuit.

Moreover, the Website is not materially different from the website in *Bloomingdale's* which the court found to be "semi-interactive." As stated above, Bloomingdale's website contains many features ranging from buying products directly from the website to checking inventory at a Maryland store, to scheduling in-person appointments at a physical store in Maryland. 2024 WL 3554991, at *1-2. TRT Nation's Website is alleged to allow the purchase of products or services, Doc. 1 at ¶ 18. Plaintiff does not allege anything else that would make the Website any more interactive than Bloomingdale's website, or Marriott's website in *Fidrych* which allowed booking hotels in the forum state for which providing an address and other personal and financial information was required. In sum, Plaintiff has failed to allege how TRT Nation's Website is any more interactive than the websites in *Fidrych* and *Bloomingdale's* because in all instances the websites allowed transacting with the defendant's website—but that is not enough.

Even if this Court considers the Website to be "highly interactive," "there is no critical difference between operating a middle-category, 'interactive' website with an e-mail link or printable order form that allows customers to purchase at a later time, on the one hand, and operating an 'active' website that allows customers to complete the purchase online." *Shamsuddin v. Vitamin Research Prods.*, 346 F. Supp. 2d 804, 813 (D. Md. 2004). "The ultimate question remains the same, that is, whether the defendant's contacts with the state are of such a quality and

nature such that it could reasonably expect to be haled into the courts of the forum state." *Id.* As stated above, there has been no showing that the Website was expressly aimed at Maryland.

Plaintiff also urges this Court to follow *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) and *Doe v. Call-On-Doc, Inc.*, 2025 WL 1677632 (S.D. Cal. June 13, 2025). But both of those cases are contrary to Fourth Circuit precedent and how this Court has applied it. In *Briskin*, the Ninth Circuit ruled that to satisfy *Calder's* express aiming requirement, a defendant does not need to specifically target one state over others or have a "forum-specific focus". 135 F.4th at 757. Instead, the court found that a defendant who installs cookies on devices used to access third-party websites can be considered to have expressly aimed its conduct at California if it knew, at any point, that those users were located in California. 135 F.4th at 773 (Callahan, J. dissenting) ("According to the majority opinion, because Shopify "knew the location" of plaintiff Brandon Briskin before installing cookies onto his device, Shopify "expressly aimed" its conduct toward the State of California."). Indeed, under the Ninth Circuit's analysis, so long as the conduct reaches all states and the defendant knows of such reach, it can be sued in any state. *Id.* (Callahan, J. dissenting) ("Under our circuit's newly divined rule, when a company attaches cookies to a person's electronic device, jurisdiction attaches wherever that person happens to be, and indeed, wherever that person happens to travel thereafter."). And *Doe* had to follow *Briskin* as it is binding on that court. 2025 WL 1677632 at *8 (noting it was "relying on *Briskin*" for its conclusion).

However, the Fourth Circuit and this Court have rejected the notion that the operation of a nationwide website can subject a defendant to personal jurisdiction anywhere where its website might be accessed. *See, e.g.*, *Fidrych*, 952 F.3d at 141 ("In our view, the mere fact that the website is accessible in a given state does not mean that Marriott is targeting its activities at that state."); *Curd*, 692 F. Supp. 3d at 532 ("If Plaintiff were correct that operation of a website with general

nationwide accessibility is sufficient, without more, for a court to exercise personal jurisdiction, it would naturally follow that every state could exercise jurisdiction over Papa John's. This conclusion is inconsistent with the law…."). Unlike the Ninth Circuit, the Fourth Circuit looks at whether the website targets the forum state to a greater extent than other states. *Fidrych*, 952 F.3d at 141 ("While Marriott obviously uses its website to engage in commercial transactions, the website does not target South Carolina residents for commercial transactions any more than it targets any other state."). Indeed, following *Briskin* and *Doe* in this case would lead to inconsistent rulings within this District as the decisions in *Curd* and *Bloomingdale's* cannot be reconciled with the expansive view of personal jurisdiction in *Briskin*. Moreover, while Plaintiff now attempts to argue otherwise, the allegations in the Complaint do not show that TRT Nation held any of the detailed geo-location knowledge that Shopify conceded to have *before* installing cookies on user devices. *Briskin*, 135 F.4th at 746 ("Shopify concedes that its geolocation technology allowed it to know that Briskin's device was located in California when it installed cookies on Briskin's device"). Here, Plaintiff alleges the opposite—that Google Analytics "immediately intercepts a user's interaction with the webpage every time the user visits it…," meaning, it operates before even knowing where a user might be located. Yet, even if Plaintiff had alleged in the Complaint that TRT Nation knows where a user is located before supposedly deploying Google Analytics to intercept the alleged use of the Website (which would be false), *Briskin* is still contrary to the law in the Fourth Circuit. The Court, therefore, should decline to follow *Briskin*.

The rest of the cases cited by Plaintiff for the proposition that he can show personal jurisdiction because Google Analytics allegedly intercepted "Plaintiff's information related to his prescription medications" fare no better as they are either entirely inapplicable or contrary to the rulings in this District. *Reynolds Innovations Inc. v. Rodriguez*, 2015 WL 12564212, at *1

(M.D.N.C. Dec. 2, 2015) (trademark infringement action related to products); *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130, 133-34 (D. Md. 1981) (breach of contract with respect to the sale of goods); *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1096 (9th Cir. 2023) (trademark infringement action related to products sold in the forum); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 742 (N.D. Cal. 2023) (finding mere sale of product to the plaintiff via a website sufficient for finding express aiming which is contrary to *Bloomingdale's*).

All of Plaintiff's arguments fail to show how TRT Nation, by operation of the Website, targeted Maryland "any more than it targets any other state." *Fidrych*, 952 F.3d at 141. "Instead of targeting any particular state, the website makes itself available to any one who seeks it out, regardless of where they live." *Id.* Under those circumstances, without showing the Website was purposefully directed at Maryland, Plaintiff cannot establish personal jurisdiction is appropriate.

### B. The Allegations in the Complaint do not Demonstrate Purposeful Availment.

Plaintiff next contends that "[e]ven under the traditional purposeful availment analysis," there is specific personal jurisdiction. (Doc. 15 at 17). But in website cases in the Fourth Circuit, courts apply the *ALS Scan* test to assess purposeful availment. *See, e.g.*, *Fidrych*, 952 F.3d at 140-42 (applying *ALS Scan* to determine whether there was purposeful availment); *Curd*, 692 F. Supp. 3d at 531 (same). Under the *ALS Scan* test, Plaintiff must show a defendant "directs electronic activity into the State" with the "manifested intent of engaging in business or other interactions within the State." *Fidrych*, 952 F.3d at 142 (quoting *ALS Scan, Inc.*, 293 F.3d at 714. Plaintiff acknowledges this "manifest intent" requirement and tries to conclusively argue he meets it but, at the same time, that it is not required. Both arguments fail.

Plaintiff asserts that "Defendant's treatment of Maryland patients like Plaintiff and sale of prescription medications and medical services into Maryland clearly evidences an intent to target

the Maryland market." Doc. 15 at 17. Plaintiff also argues that TRT Nation "specifically accessed and targeted the Maryland market and derived revenue from Maryland consumers (like Plaintiff)." (*Id.*). But these are not allegations that are found anywhere in the Complaint. *See generally* Doc. 1. Indeed, the only Maryland connection alleged in the Complaint is *Plaintiff's* use of the Website from Maryland to make purchases. *Id.* at ¶¶ 7-8. Plaintiff cannot amend his Complaint through argument of counsel in response to a Motion to Dismiss. *See, e.g.*, *Rivera v. Altec, Inc.*, 2021 WL 2784265, at *10 n.6 (D. Md. July 2, 2021). Simply put, the Complaint contains no allegations from which this Court can find that TRT Nation directs its Website to Maryland with the "manifest intent" to engage in business in Maryland. *Curd*, 692 F. Supp. 3d at 531-32 ("Although Plaintiff was able to access Papa John's website from Maryland, this does not lend to the conclusion that Papa John's intentionally directed its internet activity toward Maryland any more than it directed its internet activity toward other states….").

Plaintiff argues that this Court's decision in *Curd* is distinguishable, but it is not. Plaintiff attempts to distinguish *Curd* the same way he attempted to distinguish *Bloomingdale's*—by arguing that he alleges making a purchase on the Website, while the plaintiff in *Curd* did not, and that this case involves different technology. For the same reasons those facts fail to distinguish *Bloomingdale's*, they fail to serve as a meaningful way to distinguish *Curd*. *See supra* Pt.II.A. Plaintiff further attempts to assert that the alleged interception occurred "at the point of purchase" implying that it only occurs after a person is identified as a Maryland resident. (Doc. 15 at 1 & 19). But that is not what Plaintiff alleges in the Complaint (nor is it true). In the Complaint, Plaintiff alleges that Google Analytics "immediately intercepts a user's interaction with the webpage every time the user visits it…" and that Google "intercepted patients' interactions on the Website…." Doc. 1 at ¶¶ 38, 43. In other words, the Complaint does not allege that TRT Nation's use of Google

Analytics was targeted at purchases made by Marylanders once TRT Nation determined that a potential purchaser was in Maryland, and his attempt to do so now through the Opposition fails. *See, e.g.*, *Rivera*, 2021 WL 2784265, at *10 n.6.

Plaintiff's attempt to evade the impact of *Fidrych* is similarly unavailing. Here, again, Plaintiff attempts to distinguish the case because the plaintiff did not allege to make a purchase through the website at issue. Doc. 15 at 18. But, again, what matters for purposeful availment is the defendant's contacts with the State—not what a plaintiff did. *See supra* Pt.II.A. Moreover, Plaintiff ignores that the plaintiff there alleged using the website to select the hotel where the incident occurred and that the booking for the hotel also occurred on the website. *Fidrych*, 952 F.3d at 139 (explaining that the plaintiff submitted an affidavit that he used the defendant's website to review and select the hotel, and that a travel agent used the website to book the hotel). Thus, in *Fidrych*, the plaintiff attempted to base personal jurisdiction on where the website used to select and book the hotel where the injuries occurred was accessed. This was rejected by the Fourth Circuit. Plaintiff also argues that the wrongful act in *Fidrych* did not occur in the forum state. (Doc. 15 at 18). But that was not the dispositive issue in the case, nor does it render *Fidrych* inapplicable in this instance simply because Plaintiff alleges the "interception" occurred while he was in Maryland. *Bloomingdale's*, 2024 WL 3554991, at *6-7 (applying *Fidrych* in analogous case); *Curd*, 692 F. Supp. 3d at 532 (same). Plaintiff asks this Court to find *Fidrych* inapplicable despite the Court's application of *Fidrych* in analogous cases and offers no justification for such a departure. The result of adopting Plaintiff's view of personal jurisdiction would be inconsistent rulings within this District.

Lastly, Plaintiff argues that the "manifest intent" requirement of *ALS Scan* "is only required when the website at issue falls under *Zippo's* middle ground, but here, Defendant's



135652.000004\4907-9622-7996.8

Website is at the 'end of the spectrum' where Defendant clearly does business over the Internet…." Doc. 15 at 17. Plaintiff cites to *Chavakula v. Christian Heritage Broad, Inc.*, 2023 WL 2307367, at *3 (D. Md. Feb. 28, 2023) in support. But *Chavakula* did not hold that the "manifest intent" requirement can be disregarded based on the level of interactivity of a website. Plaintiff reads too much from *Chavakula's* statement of the law. The language from *Chavakula* that Plaintiff relies upon only stands for the well-known proposition that a website's interactivity is a jurisdictionally relevant fact that can inform the court's application of *ALS Scan*. *Chavakula*, 2023 WL 2307367, at *3 (stating that under *ALS Scan*, "the court must consider the nature and quality of the activity conducted over the internet"). But as *Fidrych* cautions, the court must not elevate mere interactivity of the website over the key issue of whether a defendant purposefully directed activities at the forum. *See also Shamsuddin*, 346 F. Supp. 2d at 811 ("[W]ebsite interactivity may have some bearing on the jurisdictional analysis, but it does not control the outcome."). Plaintiff's reading of *Chavakula* would place the decision in direct conflict with *Fidrych*. *See Fidrych*, 952 F.3d at 142.

Plaintiff's repeated invocation of the buzzwords "highly interactive" is otherwise unavailing because the Complaint does not allege facts showing that the Website is used to "enter into long-term contracts 'that involve the knowing and repeated transmission of computer files over the internet.'" *Id.* at 141-42 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). The mere sale of purchases or services through the Website, even repeat purchases, does not necessarily place it in the "end of the spectrum" of active websites under *Zippo* or make it a dispositive factor. *See supra* Pt. A. Indeed, Plaintiff has not alleged that TRT Nation's Website and alleged contacts with Maryland through the Website are so materially distinct from the websites and alleged contacts in *Bloomingdale's* or *Curd* that this case commands a different outcome. Plaintiff does not allege sufficient facts in the Complaint that, even taken as

true for purposes of the Motion to Dismiss, make a prima facie showing of purposeful availment.

## C. PLAINTIFF'S CLAIMS ARE UNRELATED TO ANY ALLEGED MARYLAND CONTACTS.

Plaintiff must also show that his claims arise out of or relate to TRT Nation's alleged Maryland contacts. He cannot. His claims concern the Website's use of Google Analytics and not the sale of products or services to Maryland residents that he cites as the forum contact.

Plaintiff's main contention is that "Defendant procured Google to intercept information regarding the specific medications that Plaintiff and class members purchased" at the point of purchase. Doc. 15 at 22. But that is not what Plaintiff alleges in the Complaint. Rather, Plaintiff alleges that "Defendant procured Google to track and intercept Plaintiff's and Class members' internet communications *while navigating* the Website," the alleged interception "occurred regardless of the specific prescription purchased by the customer," and Google Analytics "intercepts a user's interaction with the webpage every time the user visits it…." Doc. 1 at ¶¶ 26, 38 & 81 (emphasis added). Plaintiff does not allege in the Complaint that TRT Nation specifically procured Google to target product purchases at the point of purchase and his attempt to now morph his claims is not appropriate. *See, e.g.*, *Rivera*, 2021 WL 2784265, at *10 n.6.

But, in any event and more importantly, the products and services Plaintiff claims he purchased on the Website are not what give rise to a potential cause of action or the alleged injuries. *See Hasson*, 114 F.4th at 195 ("Here, while Schnur details Papa Johns' promotion of its products in Pennsylvania, he did not…allege facts regarding Papa Johns' in-forum promotion of the device that allegedly harmed him—the website."). For this reason, Plaintiff's position that causing harm to a purchaser of a product is sufficient for personal jurisdiction, and the case he cites in support, are not persuasive because this is not a products liability case or other similar case involving a claim with respect to the products purchased and delivered into a state. *Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 821 (D.N.J. 2021) (products liability case).

This case is much more like *Hasson* and *Delong*. Like in *Hasson* and *Delong*, it was not Plaintiff's purchase of any product or sale that led to the injury he sues for, but rather his use of the Website. *Hasson*, 114 F.4th at 194 (noting that even if Papa John's allows website users to order food, that is not enough because it is the website that was at issue and not the products sold); *Delong,* 2025 WL 2447787, at *9 (although the plaintiff alleged purchasing private adult products on the defendant's website and that such purchases were disclosed to Google, finding the plaintiff's "alleged injury is unrelated to the sale of products in Pennsylvania and relates only to allegedly intrusive and tortious behavior that occurs when one is browsing the website, regardless of purchase."). Similarly, although the plaintiff in *Bloomingdale's* did not allege making a purchase, the Court observed that it was access to the website that gave rise to the alleged injuries, rather than any of the contacts with Maryland. *Bloomingdale's*, 2024 WL 3554991, at *6. Further, the problem with Plaintiff's reliance on the analogy from *Briskin* is that it is just not analogous. An entity running an in-person clinic in Maryland is obviously present in the forum, targeted the forum through its physical presence, and any wrongful act committed while physically present in the forum satisfies personal jurisdiction. A nationwide website that does not target a particular state is not the same as being physically present in the forum. Plaintiff's claims arise out of and relate to the technologies used on the Website, not his purchase or use of products delivered to him in Maryland. Here, the relatedness prong of specific personal jurisdiction cannot be satisfied and, thus, this Court cannot exercise personal jurisdiction over TRT Nation.

## III. CONCLUSION

For the reasons stated above, and in the Motion to Dismiss, this Court should dismiss this action for lack of personal jurisdiction. Plaintiff cannot show the Website was used to directly target Maryland or that the claims arise out of or relate to the alleged Maryland contacts.

Dated: April 13, 2026.

Respectfully submitted:

*/s/ Elizabeth A. Scully*
Elizabeth A. Scully (MD Fed. Bar No. 27402)
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5304
Tel: 202.861.1698
Fax: 202.861.1783
escully@bakerlaw.com
*Attorneys for Defendant Nation Medical Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFIY that on April 13, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Elizabeth A. Scully*
Elizabeth A. Scully (MD Fed. Bar No. 27402)
Baker & Hostetler LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, NW
Washington, D.C. 20036-5304
Tel: 202.861.1698
Fax: 202.861.1783
escully@bakerlaw.com